UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 8:13-cr-252-T-26 TBM

JOHN ANDREW WELDEN

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, Acting United States Attorney for the Middle District of Florida, and the defendant, John Andrew Welden, and the attorney for the defendant, Todd Foster, Esquire, mutually agree as follows:

A.   **Particularized Terms**

1.   Counts Pleading To

The defendant shall enter a plea of guilty to Count One and Count Two of the Superseding Information.  Count One charges the defendant with tampering with a consumer product that affected interstate or foreign commerce, resulting in bodily injury to an individual (R.L.), in violation of Title 18, United States Code, Sections 1365(a)(4) and 2.  Count Two charges the defendant with conspiracy to commit mail fraud, in violation of Title 18, United States Code, Section § 371.

Defendant's Initials _____                        AF Approval _____

2.    Maximum Penalties

Count One carries a maximum sentence of ten (10) years of imprisonment, a fine of not more than $250,000, a term of supervised release of three (3) years, and a special assessment of $100, said special assessment to be due on the date of sentencing.

Count Two carries a maximum sentence of five (5) years of imprisonment, a fine of not more than $250,000 or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of three (3) years, and a special assessment of $100, said special assessment to be due on the date of sentencing.

The sentences imposed with respect to Count One and Count Two may be ordered by the Court to run <u>consecutively</u> to each other. As noted below, the parties have agreed to recommend to the Court that the sentences of imprisonment with respect to Count One and Count Two be ordered to run <u>consecutively</u> to each other. The terms of supervised release must be ordered to run <u>concurrently</u> with each other.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

Defendant's Initials _____                    2

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

First:        The defendant tampered with, or attempted to tamper with, a consumer product, its labeling, or its container;

Second:    The consumer product affected interstate or foreign commerce;

Third:       The defendant acted with reckless disregard for the risk that another person would be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk; and

Fourth:     The defendant's actions resulted in bodily injury to the individual described in the Superseding Information (R.L.).

The elements of Count Two are:

First:        Two or more persons in some way agreed to try to accomplish a shared and unlawful plan;

Second:    The defendant knew the unlawful purpose of the plan and willfully joined in it;

Third:       During the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the Superseding Information; and

Fourth:     The overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

Defendant's Initials _____                    3

4.      Indictment Waiver

Defendant will waive the right to be re-charged by way of indictment before a federal grand jury.

5.      Underlying Indictment Dismissed

At the time of sentencing, the indictment pending against the defendant will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

6.      No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

7.      Mandatory Restitution to Victims of Offense of Conviction

Pursuant to Title 18, United States Code, Sections 3663A(a) and (b), defendant agrees to make full restitution to the victim(s) in this case, as determined by the Court.

8.      Joint Recommendation Regarding Applicable Sentencing Guidelines

The United States and the defendant agree to jointly recommend to the Court that the sentencing guidelines described herein apply in this case with respect to both Count One and Count Two. See Section 1B1.2 (Applicable Guidelines).  Guideline Section 2N1.1 applies to cases involving tampering with consumer products involving

Defendant's Initials                     4

risk of bodily injury and includes a cross reference to, among other guidelines, Section 2A2.1 in cases where the offense was tantamount to attempted murder. For sentencing purposes, the United States and defendant agree to recommend to the Court that the attempted murder cross reference in Section 2A2.1 applies in this case, based on the defendant's attempt to murder the "unborn child" (as defined in Title 18, United States Code, Section 1841(d)) of the victim (R.L.) in this case. As a result, pursuant to Section 2A2.1(a)(1), the base offense level for the defendant would be level thirty-three (33). In addition, pursuant to Section 2A2.1(b) and the "Specific Offense Characteristics," a three (3) level increase is appropriate, based on the nature and degree of the injuries sustained in this case and based on the applicable definitions found in the sentencing guidelines. That is, pursuant to Application Note 1 to Section 2A2.1, "Permanent or life-threatening bodily injury" and "serious bodily injury" have the meaning given to those terms in Application Note 1 of the Commentary to Section 1B1.1 (Application Instructions). For example, "serious bodily injury" includes any "injury involving extreme physical pain" or "requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." As noted below, a three (3) level downward adjustment for timely acceptance of responsibility would apply. The resulting adjusted offense level would, therefore, be level thirty-three (33). There is no stipulation or agreement between the parties with respect to the defendant's applicable criminal history category.

Defendant's Initials _____     5

The parties understand that such a joint recommendation is not binding on the Court, and if not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

9.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).   The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level.   The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _____                6

10.   Joint Recommendation Regarding Appropriate Sentence

At the time of sentencing, the United States and the defendant agree to recommend to the Court that the appropriate sentence in this case is a **term of imprisonment of one hundred, sixty-four (164) months** and a term of supervised release of three (3) years. Because of the statutory maximum sentences applicable in this case with respect to each count of conviction, that is, ten (10) years (Count One) and five (5) years (Count Two), the United States and the defendant agree to recommend to the Court that the sentences imposed with respect to Count One and Count Two be ordered to run <u>consecutively</u> to each other. The United States and the defendant also agree to request that the Court recommend that: (1) the Bureau of Prisons waive any Public Safety Factor (PSF) that would disqualify the Defendant from being eligible to be placed in a camp facility and (2) the Defendant be designated to a camp facility while incarcerated in the Bureau of Prisons. As noted below, these joint recommendations are not binding on the Court and, if the Court does not accept the joint recommendations, the defendant will not be permitted to withdraw his plea pursuant to this agreement. Further, the Defendant acknowledges that he understands that any determination as to the jail facility where he will be housed is within the sole discretion of the Bureau of Prisons. The Defendant further agrees that he will not seek to have the three (3) year term of his supervised release terminated early.

Defendant's Initials _____          7

11.    Cooperation - Substantial Assistance to be Required

Defendant agrees to continue to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  Based upon the promises and considerations set forth herein, the defendant acknowledges and understands that the United States **will not** consider or request any sentence reduction, either at the time of sentencing or thereafter, based on the defendant's cooperation.  Nevertheless, the defendant will remain obligated to cooperate fully and truthfully with the United States.

12.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

Defendant's Initials _____        8

13.   Cooperation - Responsibilities of Parties

a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, as noted herein, the defendant understands that the government will not request that the Court impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)   The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)   The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of

Defendant's Initials _____   9

the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

Defendant's Initials _____                    10

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

**B.     Standard Terms and Conditions**

1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987), including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _____     11

2.  Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.  Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

4.  Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his/her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he/she has any interest or over which the defendant exercises control, directly or indirectly, including

Defendant's Initials _____        12

those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

5.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and

Defendant's Initials _____        13

acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

6.  Defendant's Waiver of Right to Appeal

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials _____                    14

7.     Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

8.     Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

9.     Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to

Defendant's Initials _____               15

be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

10.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

Defendant's Initials _____   16

FACTS

On March 29, 2013, Defendant John Andrew Welden (hereinafter Defendant), with reckless disregard for the risk that another person would be placed in danger of death or bodily injury, and under circumstances manifesting extreme indifference to such risk, did tamper with a consumer product that affected interstate or foreign commerce, specifically, Misoprostol (brand name Cytotec). The Defendant tampered with the consumer product by removing, altering, and obliterating the identifiers from the product, and from the labeling of and container for such a product, by placing labels with the name of an individual (R.L.) and the name of a different medicine (Amoxicillin) on the container for the product, resulting in bodily injury to R.L.

In addition, from March 27 to 29, 2013, the Defendant conspired and agreed with an unidentified co-conspirator (UCC) to devise a scheme and artifice to defraud and to obtain property by means of materially false and fraudulent pretenses, representations, and promises. The Defendant caused a private and commercial interstate carrier (Federal Express) to be used in connection with the execution of the scheme.

During mid-March of 2013, the Defendant learned that the victim, R.L., was pregnant with their child. The Defendant had been in a relationship with R.L. since approximately July of 2012, though he also had another long-term girlfriend. Text messages sent to and from the Defendant to R.L.'s cell phone confirm the fact that R.L. wanted to keep the baby, but the Defendant did not.

Defendant's Initials _____          17

As confirmed by the Defendant's cell phone records, on Wednesday, March 27, 2013, the Defendant contacted the UCC, an employee of the Sunlake Pharmacy, located in Lutz, Florida, and asked whether the pharmacy carried Cytotec (which is a brand name for Misoprostol).

Because the pharmacy did not carry Cytotec and based on the Defendant's request, the UCC ordered Cytotec pills from a pharmaceutical company in Michigan. That Michigan company shipped the pills from Michigan to Sunlake Pharmacy via Federal Express on March 28, 2013. Federal Express is a private and commercial interstate carrier. The Cytotec pills were then delivered by Federal Express to and received by the Sunlake Pharmacy in Lutz, Florida.

The Michigan-based company had received the Cytotec pills from the manufacturer, Greenstone LLC, which is based out of Peapack, New Jersey. A representative of Greenstone LLC reported that the Cytotec pills were manufactured in Puerto Rico and include an active ingredient shipped from the United Kingdom. Therefore, the Cytotec pills involved in this case are consumer products that affected interstate and foreign commerce. The published Greenstone LLC warnings and other information concerning Misoprostol include the following:

Defendant's Initials _____        18

## WARNINGS

MISOPROSTOL ADMINISTRATION TO WOMEN WHO ARE
PREGNANT CAN CAUSE BIRTH DEFECTS, ABORTION, OR
PREMATURE BIRTH. UTERINE RUPTURE HAS BEEN REPORTED
WHEN MISOPROSTOL WAS ADMINISTERED IN PREGNANT WOMEN
TO INDUCE LABOR OR TO INDUCE ABORTION BEYOND THE
EIGHTH WEEK OF PREGNANCY * * *. MISOPROSTOL SHOULD NOT
BE TAKEN BY PREGNANT WOMEN TO REDUCE THE RISK OF
ULCERS INDUCED BY * * * NSAIDS * * *.

PATIENTS MUST BE ADVISED OF THE ABORTIFACIENT PROPERTY
AND WARNED NOT TO GIVE THE DRUG TO OTHERS.

Greenstone LLC literature also describes the following effects:

Nonteratogenic effects: See boxed **WARNINGS**. Misoprostol may
endanger pregnancy (may cause abortion) and thereby cause harm to the
fetus when administered to a pregnant woman. Misoprostol may produce
uterine contractions, uterine bleeding, and expulsion of the products of
conception. Abortions caused by misoprostol may be incomplete. If a
woman is or becomes pregnant while taking this drug to reduce the risk of
NSAID-induced ulcers, the drug should be discontinued and the patient
apprised of the potential hazard to the fetus.

On Thursday, March 28, 2013, the Defendant took R.L. to his father's medical

practice for an examination to confirm the pregnancy. Defendant's father is an OB-

GYN doctor with 31 years experience and a specialty infertility practice. The doctor's

examination, including an ultrasound, revealed that R.L. had a "viable embryo

measuring 8.26 mm" and that "[r]hythmic cardiac motion is seen at 133.9 bpm" (beats

per minute). R.L. was provided with a sonogram clearly showing her unborn child.

Defendant's Initials _____                    19

During a recorded, voluntary interview with Hillsborough County Sheriff's Office (HCSO) detectives on April 9, 2013, the doctor indicated that the embryo was "healthy."

On the morning of Friday, March 29, 2013, the Defendant went to the Sunlake Pharmacy with a prescription for Cytotec pills under the signature of the father. The Defendant had forged his father's name on the prescription. The prescription was in the Defendant's own name. When asked about the Cytotec prescription during his April 9, 2013, interview with HCSO detectives, the doctor confirmed that it was a forgery. The Defendant gave the forged prescription to the UCC in order to fill the Cytotec prescription, which had previously been ordered by the pharmacy.

The Defendant also discussed with the UCC obtaining a prescription label in the name of R.L. (*i.e.*, property from the pharmacy) and a pill bottle, even though R.L. was not a customer of the pharmacy. The UCC agreed to and did provide the false and fraudulent prescription label and empty pill bottle to the Defendant. The prescription label was an authentic label from the pharmacy and contained instructions for taking an unspecified medication and read as follows:

**Sunlake Pharmacy**
18964 N. Dale Mabry, Lutz, FL 33548 Ph: (813) 949-5100

7302-0                [NAME OF DOCTOR]
**[NAME OF R.L.]**
120 FLORAL DR., TAMPA, FL 33613

TAKE 3 TABLETS SUBLINGUALLY THREE TIMES
DAILY FOR THREE DAYS

Defendant's Initials _____                20

The UCC was aware that the Defendant would be placing medication into the pill bottle bearing the false and fraudulent label created by the UCC.  At the time that the UCC was preparing the false and fraudulent prescription label, the UCC was also in the process of filling the prescription for Cytotec for the Defendant.

Sunlake Pharmacy records indicate that, even though R.L. was not a customer of the pharmacy, a patient profile was created in the pharmacy system for R.L. as "Patient #2344."  The UCC created this fraudulent patient profile at the pharmacy in order to be able to print the false prescription label in R.L.'s name and give it to the Defendant.

During the late morning of March 29, 2013, the Defendant returned to the Sunlake Pharmacy and picked up the Cytotec prescription along with pre-natal and other vitamins.  Because the Cytotec pills have identifying markings on them, the Defendant scratched the markings off the pills (that is, tampered with the pills). In addition, the Defendant created and affixed to the empty pill bottle a second label which read: "Amoxicillin: 125mg oral tablets". The Defendant placed a quantity of Cytotec pills (with the markings removed) into the pill bottle bearing the two false labels described herein.

Also on March 29, 2013, the Defendant spoke with R.L. and told her that his father said that she had an infection and that he was going to bring her antibiotics to take for the infection.  Later that day, the Defendant went to R.L.'s residence and gave her the Cytotec (disguised as Amoxicillan in the pill bottle with the false label in her

Defendant's Initials _____     21

name).   The Defendant told R.L. that she should take the pills sublingually.   As discussed below, the Defendant's intention and motivation in giving the Cytotec pills to R.L. was to cause R.L. to have a miscarriage.

Shortly before 4:00 p.m., on March 29th, R.L. took one of the Cytotec pills sublingually.   While at work, R.L. began showing her co-workers the sonogram of her baby and telling them how excited she was to have the baby.  However, within less than two hours, R.L. began feeling severe pain and cramps and eventually had to leave work because of the pain.

The next morning, Saturday, March 30, 2013, R.L. continued to experience severe pain and heavy bleeding and suspected that the pills were not Amoxicillin.  A visit by R.L to a Winn Dixie pharmacy confirmed that the pills were not Amoxicillin.  R.L. spoke with the Defendant who came to her house, brought her soup and feigned being supportive as R.L. expressed concern over the health of the baby.  The Defendant said that he wanted to take the pills back to get his money back, but R.L. did not give the pills back.  Later during the day on March 30th, R.L. continued to communicate with the Defendant via text messages concerning her health, indicating that she was in severe pain.

On Sunday, March 31st, R.L. went to Tampa General Hospital where she was examined by medical personnel, who determined that her unborn child was dead.  As a result of the taking of the Cytotec, R.L. suffered extreme physical pain, bleeding,

Defendant's Initials _____

22

cramping, and other symptoms, had to be hospitalized, and had to undergo a medical procedure and intervention to remove the products of conception.

During the evening of March 31, 2013, HCSO detectives interviewed R.L. at the hospital and were able to record a telephone conversation between R.L. and the Defendant. During that recorded conversation, the Defendant eventually confessed to having tampered with the Cytotec pills and the label and to giving the pills to R.L. knowing and intending that it would cause a miscarriage. Stated another way, the Defendant admitted that it was his intention to kill and that he attempted to kill the "unborn child" of R.L.

At approximately 9:45 p.m. that same evening, HSCO detectives recorded a voluntary, non-custodial interview of the Defendant. Once again, the Defendant admitted to tampering with the Cytotec pills and to knowingly giving them to R.L. in order to cause a miscarriage. Among the statements made during that interview were:

Det. Lowe:   And what did you ta ... did you give her some medicine?

Defendant:   Uh, yes, sir, the Cyotec.

Det. Lowe:   And you told her it was what?

Defendant:   Amoxicillin.

Det. Lowe:   Okay. But it was actually what?

Defendant:   Cyotec.

Det. Lowe:   And what does ... what do you know that to do?

Defendant's Initials _____                    23

> Defendant:  Uh, causes, uh, uterine contractions and, uh, it's a (inaudible) and it, uh ... cuts off, uh ... certain nutrients to the uterus, causes, uh, uterine contractions, uh, softening in the cervix.
>
> Det. Lowe:  So, in the end * * * what's gonna happen when you give her the medicine.
>
> Defendant:  Usually she'll have a miscarriage.

As noted in paragraph A.8., above, the parties have agreed to recommend that the applicable sentencing guidelines that should apply involve the attempted murder cross reference in Section 2N1.1 which cross references to Section 2A2.1. This recommendation is based on the facts set forth above which constitute admissions by the Defendant and a stipulation by the parties that establishes a more serious offense than the offense of conviction, within the meaning of Section 1B1.2 of the sentencing guidelines. Thus, the Defendant acknowledges for sentencing purposes that, in connection with his violation of Title 18, United States Code, Section 1365, he intentionally intended to kill and intentionally attempted to kill the unborn child in utero of R.L., which is a lesser included offense to the offense charged in Count Two of the original indictment in this case (i.e., a violation of Title 18, United States Code, Section 1841).

Defendant's Initials _____  24

11.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

12.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this **6**<sup>th</sup> day of September, 2013.

A. LEE BENTLEY, III
Acting United States Attorney

JOHN ANDREW WELDEN
Defendant

By: _____
W. STEPHEN MULDROW
First Assistant United States Attorney

TODD FOSTER
Attorney for Defendant

By: _____ FOR:
JOSEPHINE W. THOMAS
Assistant United States Attorney

RACHELLE DESVAUX BEDKE
Assistant United States Attorney
Chief, Criminal Division (South)